IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM R. TRICE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 13-546-GMS |
| ) | |
| DAVID PIERCE, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

William R. Trice. *Pro se* petitioner.

Scott Goodwin, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

**MEMORANDUM OPINION**

May 12, 2016
Wilmington, Delaware

---

[1] Warden David Pierce has replaced former Warden Perry Phelps, and original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner William R. Trice ("Trice"). (D.I. 1; D.I. 6) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to November 2010, Trice had been dating MB for approximately four to five months and had recently broken her cellular phone during a violent argument. (D.I. 15 at 1) On November 23, 2010, MB picked up Trice in her car to shop for a replacement phone. After leaving the phone store, Trice asked MB to accompany him to a bar to talk about the prior argument. While at the bar, Trice became jealous when MB saw and spoke with another male friend. *Id.*

Thereafter, when MB and Trice were driving from the bar, Trice pulled the key from the ignition and ultimately took control of the vehicle, forcing MB to ride as a passenger. (D.I. 15 at 1-2) Trice drove the car to a church parking lot, where he and MB had a heated argument. During the encounter, Trice wrapped his arm around MB's neck from behind, strangling her so hard that she urinated on herself. *Id.* at 2.

Trice then forced MB into the car and drove them to a trailer owned by his father, where he made her get out of the car, threw her to the ground, and then forced her into the trailer. (D.I. 15 at 2) Shoving MB into a corner, Trice asked her, "Why don't you love me?" while reaching for the button on her pants. Although MB told Trice that she did not want to make love to him, Trice responded, "I don't care what you want, watch this." Trice then threw MB down on the floor and pulled her pants and underwear down to her ankles. MB told Trice, "Don't do this to me," as he pushed her legs above her head, unzipped his zipper, and raped her. He then told her to pull her pants up and get up. *Id.*

Exiting the trailer, MB started to run to a neighboring residence for help, but Trice caught her from behind, wrapped his arm around her neck, and again squeezed her tightly enough to cause her to urinate. (D.I. 15 at 2) Trice dragged MB to the car and drove around for two hours, not letting her leave the vehicle. Arriving at his father's house, Trice and MB exited the car. Trice still would not let MB leave, telling her to hold him and making her promise "not to call the cops." MB reached into the car, attempting to wake Trice's father up with the car horn, but Trice grabbed her and told her, "If you blow that horn you will die right there." Ultimately, MB was able to get into the car and flee to her residence, where a friend called 911. *Id.* A forensic nurse's examination showed that MB suffered several injuries, including but not limited to: cervical strain and broken blood vessels around the left side of her neck, a contusion to her left leg and knee, bruising on her right upper arm, abrasions on her back, and lacerations to the left inner vaginal wall consistent with forcible penetration. (D.I. 15 at 3)

Trice was arrested on November 24, 2010, and subsequently indicted on charges of first degree rape, first degree kidnapping, three counts of strangulation, two counts of second degree conspiracy, terroristic threatening, third degree assault, malicious interference with emergency communications, two counts of non-compliance with bond conditions, five counts of attempted non-compliance with bond conditions, and five counts of tampering with a witness. (D.I. 15 at 3) On August 3, 2011, Trice entered a "no contest" plea to one count each of third degree rape (lesser included offense of first degree rape), strangulation, and witness tampering. *Id.* at 4. The Superior Court sentenced him a total of thirty-five years of incarceration at Level V, with credit for time served, to be suspended after eight years for one year at Level IV home confinement or work release, followed by ten years of Level III probation. *See Trice v. State*, 36 A.3d 351 (Table), 2012 WL

396050, at *1 (Del. Feb. 7, 2012). The Delaware Supreme Court affirmed Trice's convictions and sentences on February 7, 2012. *Id.*

While his direct appeal was pending, Trice filed in the Delaware Superior Court two motions for sentence modification and a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 15 at 4) The Superior Court notified Trice that it did not have jurisdiction to consider those motions during the pendency of his direct appeal. *Id.* Once the Delaware Supreme Court decided his direct appeal, Trice filed a Rule 61 motion in the Superior Court, alleging, *inter alia*, ineffective assistance of counsel allegations. *Id.* at 5. The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Trice v. State*, 62 A.3d 1224 (Del. 2013), 2013 WL 842517 (Del. Mar. 5, 2013).

Trice filed a second Rule 61 motion in May 2013, which the Superior Court denied. (D.I. 15 at 5) Trice appealed that decision and, while that appeal was pending, he filed in the Superior Court a motion to dismiss the indictment. *Id.* In August 2013, the Superior Court notified Trice that it had no jurisdiction over the motion to dismiss during the pendency of his post-conviction appeal. *Id.* The Delaware Supreme Court affirmed the Superior Court's denial of Trice's second Rule 61 motion on July 9, 2014. *See Trice v. State*, 99 A.3d 228 (Table), 2014 WL 3408666 (Del. July 9, 2014).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner

permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d

Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Trice's timely filed petition asserts the following four grounds for relief:[3] (1) his "no contest" plea was involuntary; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) abuse of judicial discretion during sentencing.

### A. Claim One: Involuntary "No Contest" Plea

Although not entirely clear, Trice's first claim appears to assert that his "no contest" plea was involuntary because his decision to enter the plea was premised upon the State's promise to *nolle prosse* charges pending against Trice's father. Trice did not raise this claim on direct appeal, but presented it in an amendment to his first Rule 61 motion. The Superior Court denied the claim as conclusory, and he did not appeal that decision. (D.I. 6 at 77) Instead, Trice raised the claim in his second Rule 61 motion. The Superior Court denied the claim as factually

---

[3]For ease of analysis, the court has renumbered Trice's claims without altering the arguments asserted therein.

7

frivolous and as procedurally barred for being untimely under Rule 61(i)(1), repetitive under Rule 61(i)(2), and procedurally defaulted under Rule 61(i)(3). (D.I. 6 at 84) The Delaware Supreme Court affirmed the Superior Court's decision that the Rule 61 motion was procedurally barred, and also ruled that the claim was barred under Rule 61(i)(4) as formerly adjudicated. *See Trice*, 2014 WL 340866, at *1.

By clearly citing and applying the procedural bars of Rule 61(i)(1), (2), (3), and (4), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61(i)(1), (2) and (3) are independent and adequate state procedural grounds effectuating a procedural default precluding federal habeas review.[4] *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim one absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Trice does not allege, and the court does not discern, any cause for his failure to assert the instant claim on direct appeal. Although the court does not need to address the issue of prejudice in the absence of cause, the court nevertheless concludes that Trice cannot demonstrate that he will suffer prejudice if the claim is not reviewed. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any

---

[4]Pursuant to Rule 61(i)(4), "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas proceeding, is thereafter barred." Del. Super. Ct. Crim. R. 61(i)(4). Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, it may be reviewed under the deferential AEDPA standard contained in § 2244(d)(1), because the fact that it was formerly adjudicated means that it was decided on the merits. Here, however, claim one is still procedurally defaulted for federal habeas purposes, because the Delaware state courts held that claim one was barred by Rule 61(i)(1), (2), and (3).

8

subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Trice's plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and that he was satisfied with his counsel's representation. Trice also indicated that neither his defense counsel nor "anybody on earth" was forcing him to enter a plea. (D.I. 6 at 52) He affirmatively answered that he understood the plea constituted a waiver of all of his trial rights, that he had no questions about the plea form, and that he had filled it out honestly. *Id.* at 53-6. Although the agreement to dismiss charges against Trice's father was not included on the guilty plea form, it was discussed during the plea colloquy, during which Trice indicated his understanding that "this plea still sticks" regardless of whether the charges against his father ended up being dropped. *Id.* When the Superior Court pointed out to Trice that he could not return later and argue that the only reason he entered the plea was to help his father, Trice replied: "No, sir. I just wanted it on the record my father's charges would be *nolle prossed*, that's all."[5] (D.I. 6 at 56) In turn, the Truth-In-Sentencing Guilty Plea Form signed by Trice indicates that he knowingly and voluntarily entered into his plea agreement; he was not promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of thirty-five years under the criminal penalty statutes. (D.I. 6 at 64)

Trice's vague and unsupported allegations in this proceeding fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Consequently, based on the aforementioned record, the court concludes that the Delaware State Courts reasonably held that Trice was bound by the representations he made during the plea colloquy and on the Truth-In-Sentencing form. *See Trice*, 2013 WL 842517, at

---

[5]The charges against Trice's father were ultimately dropped. (D.I. 15 at 12 n.5)

9

*1. The court further concludes that this record demonstrates that Trice's "no contest" plea was intelligent, voluntary, and knowing, thereby establishing that Trice will not suffer prejudice as a result of his default of the instant claim.

Finally, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because Trice has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

### B. Claim Two: Prosecutorial Misconduct

In claim two, Trice contends that the prosecutor engaged in misconduct during the preliminary hearing by implying that Trice was guilty of other charges that were "actively pending" at the time. Trice presented this argument in his first Rule 61 motion, and the Superior Court denied it for lack of prejudice because he failed to demonstrate how the alleged prosecutorial misconduct contributed to his conviction. (D.I. 6 at 76) The Delaware Supreme Court affirmed that decision, explicitly holding that the claim was without merit because Trice's voluntary "no contest" plea "constituted a waiver of all claims occurring prior to the entry of that plea." *Trice*, 2013 WL 842517, at *1.

A criminal defendant's valid guilty plea waives all non-jurisdictional issues and claims "relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). In Delaware, a "no contest" plea is equivalent to a plea of guilty. *See Betts v. State*, 983 A.2d 75, 76 (Del. 2009). Having just determined in its discussion of claim one that Trice's "no contest" plea was knowing, voluntary, and intelligent, the court concludes that Trice waived his right to assert the instant pre-plea prosecutorial misconduct claim. Thus, the court will deny claim two.

10

### C. Claim Three: Ineffective Assistance of Counsel

In claim three, Trice contends that defense counsel provided ineffective assistance during the plea process because: (1) he represented Trice while operating under a conflict of interest; and (2) he allowed Trice to enter a plea that was based on coercion, threats and promises. Trice also contends that defense counsel was ineffective during the December 2, 2010 preliminary hearing for not properly presenting adversary challenges to the State's statement regarding Trice's other pending criminal matters. In Trice's first post-conviction appeal, the Delaware Supreme Court denied these arguments as meritless and/or vague and conclusory. As a result, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

11

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### 1. Conflict of interest

Trice contends that his public defender provided ineffective assistance by knowingly representing him while operating under a conflict of interest, because the public defender's office had determined it could not represent him due to its involvement in other pending criminal matters involving Trice. A brief summary is necessary to understand this contention. In Kent County in April 2010, Trice was charged with second degree arson and second degree burglary (Case Number 1004011070). (D.I. 6 at 66) He was also charged in Kent County in June 2010 with non-compliance with bond (Case Number 1006012519). Because the Kent County public defender's office had previously represented a client in Kent County in a case in which Trice was a direct adverse eyewitness, the Kent County public defender's office determined it was conflicted and declined to represent Trice in his two Kent County cases. In August 2010, the Superior Court in Kent County appointed counsel to represent Trice in those Kent County cases. The Kent County cases were resolved when the State *nolle prossed* all three Kent County charges against Trice on March 22, 2011. *Id.*

However, on November 24, 2010, Trice was arrested in Sussex County for committing the crimes charged in the instant case. The Sussex County public defender's office determined that it was not conflicted out of representing Trice on the Sussex County charges because the

Sussex County charges were wholly unrelated to Trice's charges in Kent County and did not implicate any issues related to the Kent County public defender office's former client in Kent County. *Id.* Consequently, a Sussex County public defender ("defense "counsel") started representing Trice on November 30, 2010.

Trice presented the instant conflict-of-interest argument in his first Rule 61 motion, and the Superior Court denied it for three reasons. First, the Superior Court explained that, "to the extent any technical conflict may have existed, such conflict ended in March 2011 when the Kent County charges were dismissed." (D.I. 6 at 74) Second, the Superior Court opined that the argument was procedurally defaulted under Rule 61(i)(3) because Trice did not appeal the Superior Court's denial of his March 2011 motion to assign new counsel. (D.I. 6 at 75) Finally, the Superior Court concluded that Trice had waived the conflict-of-interest claim because he did not raise the issue during the thorough plea colloquy and, as a result, he could not establish any substantive conflict of interest that in any way prejudiced him. (D.I. 6 at 75-6)

The Delaware Supreme Court affirmed the Superior Court's decision on post-conviction appeal, explaining that,

> [t]he transcript of the plea colloquy reflects that Trice thoroughly discussed the implications of his plea with his counsel and was satisfied with his counsel's representation. Because Trice is bound in these proceedings by that representation, we conclude that his claim of ineffective assistance is without merit.

*Trice*, 2013 WL 842517, at *1.

A Sixth Amendment conflict-of-interest claim is usually treated as a special type of ineffective assistance of counsel claim, because the attorney's assistance will be presumed to have been prejudicially ineffective if the attorney actively represented conflicted interests that adversely affected his performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To

prevail on an ineffective assistance of counsel claim based on a conflict of interest arising in the context of an attorney's representation of multiple clients, a petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* An actual conflict of interest arises when "trial counsel's interests and the defendants' interests diverge[] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984). As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "[T]he conflict must cause some lapse in representation contrary to the defendant's interests . . . [which] can be demonstrated not only by what the attorney does, but by what he refrains from doing." *Mickens v. Taylor*, 535 U.S. 162, 173 (2002). As noted by the Supreme Court, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists." *Id.* at 167-68.

In this case, the Delaware Supreme Court did not review the instant conflict-of-interest claim under *Cuyler* to determine if defense counsel labored under an actual conflict of interest. Instead, the Delaware Supreme Court determined that Trice could not establish prejudice under *Strickland* and *Hill*. *See Trice*, 2013 WL 842517, at *1. Given these circumstances, the first step in this court's inquiry is to review *de novo* Trice's contention that counsel labored under an actual conflict of interest while representing him.

Notably, Trice has not identified any viable, alternative defense strategy that defense counsel failed to pursue because of the Kent County public defender office's prior relationship

14

with the defendant in the criminal case in which Trice was an adverse witness. In addition, Trice has not demonstrated what further duty defense counsel owed the Kent County criminal defendant that would have impeded defense counsel's efforts to defend Trice. The criminal defendant in the Kent County case was neither a co-defendant nor even a possible suspect in the instant case whom defense counsel might have had a duty to protect from prosecution. *See Morelli*, 169 F.3d at 811. For these reasons, the court concludes that defense counsel was not operating under an actual conflict of interest while representing Trice which, in turn, means that the court may not presume prejudice and must review the instant contention under the *Strickland/Hill* standard.

Turning to the first prong of the § 2254(d)(1) inquiry, and having just determined that there was no actual conflict of interest, the court notes that the Delaware Supreme Court correctly identified *Strickland* and *Hill* as governing Trice's instant ineffective assistance of counsel contention. *See Trice*, 2013 WL 842517, at *1 n.5. As such, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* and *Hill* to the facts of Trice's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Delaware Supreme Court's denial of Trice's ineffective assistance of counsel allegations through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In this proceeding, Trice does not allege that he would have insisted on going to trial but for defense counsel's continued representation of him. Moreover, there was no actual conflict of interest, and the technical conflict of interest, if any, ended when the Kent County charges were

15

*nolle prossed* in March 2011, months before Trice entered his "no contest" plea. Finally, as already discussed, Trice is bound by his statements during the plea colloquy that he was satisfied with defense counsel's representation. For all of these reasons, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* and *Hill* in denying Trice's instant conflict-of-interest claim as meritless due to his failure to demonstrate prejudice.

### 2. Counsel permitted Trice to enter a plea based on coercion, threats, and promises

Next, Trice asserts that counsel provided ineffective assistance by permitting him to enter a plea counsel knew was "based on coercion, threats, and/or promises." (D.I. 6 at 8) Once again, Trice is bound by the representations he made during his plea colloquy that he was satisfied with defense counsel's representation and that nobody forced him to enter the plea. *See supra* at 9-10. The court has also determined that Trice's "no contest" plea was voluntary and knowing. Given these circumstances, the court concludes that the Delaware Supreme Court's denial of Trice's instant conclusory assertion that defense counsel improperly permitted Trice to enter a pleas based on coercion and threats was neither contrary to, nor premised upon an unreasonable application of, the *Strickland/Hill* standard.

### 3. Performed ineffectively during the preliminary hearing

In his last contention, Trice asserts that defense counsel provided ineffective assistance during the preliminary hearing by failing to correct the State's alleged incorrect comments regarding Trice's other criminal charges. This argument is unavailing. The preliminary hearing transcript reveals that the State correctly explained that Trice had a pending *charge* for noncompliance with bond, and that State also initially correctly stated that there were pending Kent County *charges* for second degree burglary and arson. (D.I. 6 at 43) Although the State

16

subsequently incorrectly described Trice's status on the Kent County arson and burglary charges as "Level III" (D.I. 6 at 44), the Court of Common Pleas judge's reference to Trice as being "out on bail for a burglary and arson second" after that incorrect "Level III" statement demonstrates that the Court of Common Pleas judge understood that the arson and burglary charges were pending *charges*, and not *convictions*. (D.I. 6 at 45) Additionally, the discussion concerning the Kent County charges occurred after the Court of Common Pleas judge had already concluded there was "probable cause as to each and all of the charges against [] Trice." (D.I. 6 at 41) Finally, Trice does not allege that he would have proceeded to trial but for defense counsel's failure to correct the State's misstatement. Given all of these circumstances, the court concludes that Trice has failed to show that defense counsel's failure to correct the State's inadvertent misstatement fell below an objective standard of reasonableness or that he was prejudiced by defense counsel's conduct.

For these reasons, the court concludes that the Delaware Supreme Court's denial of the instant contention was neither contrary to, nor premised upon an unreasonable application of, the *Strickland/Hill* standard.

Accordingly, the court will deny claim three in its entirety.

### D. Claim Four: Judicial Bias During Sentencing

In his final claim, Trice contends that docket entry number 21 on the Superior Court Criminal docket, which states that a copy of a sentence order was requested and sent in May 2011, demonstrates that the Superior Court sentenced him with a "closed mind" in August 2011 by imposing a sentence that the Superior Court had decided upon three months earlier. Trice presented this argument in his second Rule 61 motion. The Superior Court denied the argument as frivolous and as procedurally barred. (D.I. 6 at 83-4) The Delaware Supreme Court affirmed

17

that decision, explicitly holding that claim four was procedurally barred under Rule 61(i)(1) as untimely, under Rule 61(i)(2) as repetitive, and under Rule 61(i)(3) as procedurally defaulted. *See Trice*, 2014 WL 3408666, at *1. Given these circumstances, claim four is procedurally defaulted for federal habeas purposes, meaning that the court cannot review its merits absent cause and prejudice.

Trice has not asserted, and the court cannot discern, any cause for his procedural default of this claim. Trice also cannot establish any prejudice resulting from the court's refusal to consider the claim's merits. When denying this claim as procedurally barred and frivolous on post-conviction review, the Superior Court determined that docket entry 21 "involves not this case but another case. The sentence you are serving was entered for the first time on August 3, 2011, the day you pled guilty." (D.I. 6 at 83) The Delaware Supreme Court affirmed that decision.

Given Trice's failure to provide any clear and convincing to the contrary, the court accepts as correct the Delaware state courts' factual determination that docket entry 21 was a mistaken entry concerning a sentence order in a different case. The court finds support for this conclusion in the fact Trice was sentenced in accordance with the agreed upon recommendation contained in the plea agreement, and the sentencing judge specifically stated, "I will follow the recommendation." (D.I. 6 at 59) Since there is no evidence that the Superior Court decided upon a sentence three months before Trice's actual sentencing date, Trice cannot demonstrate that he will be prejudiced by his default of the instant "closed mind" at sentencing claim.

Finally, the miscarriage of justice exception to the procedural default doctrine cannot excuse Trice's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claim four as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Trice's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Trice's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.